IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE<br><br>v.<br><br>MERCY CATHOLIC MEDICAL CENTER, et al. | CIVIL ACTION<br><br>NO. 15-2085 |

**MEMORANDUM RE DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                                                               **January 26, 2016**

Plaintiff Jane Doe, a former medical resident, has sued Defendant Mercy Catholic Medical Center, a hospital where she was employed, alleging violations of the Patsy Takemoto Mink Equal Opportunity in Education Act (better known as Title IX of the Education Amendments of 1972, or simply "Title IX"), 20 U.S.C. §§ 1681–1688 (2015), and Pennsylvania state law. The primary issue presented by Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is whether Defendant operates an "education program or activity" such that Defendant is covered by Title IX.

Plaintiff claims she experienced:

1. hostile environmental sexual harassment (Count I, Title IX),

2. retaliation (Count II, Title IX),

3. quid pro quo harassment (Count II, Title IX),

4. "contract-based gender discrimination" (Count IV, Pennsylvania state law),

5. wrongful termination (Count V, Pennsylvania law), and

6. a breach of the covenant of good faith and fair dealing (Count VI, Pennsylvania law)

during her time in the residency program.

In what appears to be a decision of first impression in this Circuit, the Court agrees with Defendant that Title IX does not apply to its medical residency program. Counts I-III will accordingly be dismissed with prejudice. Count I will alternatively be dismissed with prejudice as untimely. The Court will dismiss Counts IV-VI without prejudice pursuant to 28 U.S.C. 1367(c) (2015).

## I. Allegations and Procedural History

Plaintiff began a residency with Defendant in July 2011. ECF 28, Pl.'s Third Am. Compl. ¶ 12. Plaintiff's Third Amended Complaint contains new allegations about the educational nature of Defendant's medical residency program. Id. ¶¶ 14-51.

Plaintiff alleges that during the course of the residency, Dr. James Roe ("Roe") sexually harassed her by making inappropriate comments and glances and touching her. Id. ¶¶ 41, 52-74, 77-84, 102-104. Plaintiff further alleges that Roe and Defendant took retaliatory action against her when she rebuffed his advances, such as giving her poor recommendations for post-residency fellowships. Id. ¶¶ 75-76, 85-90, 95-101, 105-114, 154-156. All of these activities, except for the residency termination discussed below, purportedly occurred over two years before Plaintiff brought suit. Plaintiff repeatedly complained about Roe's behavior to Human Resources. Id. ¶¶ 67-72, 91-93, 110-111, 121.

On April 20, 2013, Defendant terminated Plaintiff from her residency. Id. ¶¶ 116-119. Plaintiff attended an appeal hearing on April 24, at which Roe advocated for Plaintiff's dismissal. Id. ¶¶ 120-122. Plaintiff does not allege that Roe made sexual comments at this hearing. The committee members hearing Plaintiff's appeal upheld the decision to terminate but informed Plaintiff that she had five days to file a further appeal. Id. ¶ 123. Plaintiff chose not to do so, instead resigning from the residency program. Id. ¶ 124.

Plaintiff filed suit on April 20, 2015. ECF 1. After holding argument on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint on October 1, the Court granted Plaintiff leave to file the currently operative Third Amended Complaint. ECF 25. Plaintiff filed the Third Amended Complaint on October 15, ECF 28, and Defendant moved to dismiss on October 29, ECF 32.

## II. Discussion

### A. Legal Standards

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Pursuant to the "Third Circuit Rule," a limitations defense may be raised in a Rule 12(b)(6) dismissal motion. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002). The Third Circuit applies a two year statute of limitations to Title IX claims. Bougher v. Univ. of Pitt., 882 F.2d 74, 77-78 (3d Cir. 1989).

The limitations period begins to run "when the plaintiff knew or should have known of the injury upon which its action is based." Shine v. Bayonne Bd. of Educ., No. 14-4184, 2015 WL 5559842, at *3 (3d Cir. Sept. 22, 2015). However,

> [t]he continuing violations doctrine is an equitable exception to the timely filing requirement. Thus, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (citations omitted).

 **B. Plaintiff Cannot State Any Title IX Claims Against Defendant Because the Residency Program is Not An "Education Program or Activity"**

 The principal issue in this complaint revolves around the proper interpretation of Title IX. The statute forbids discrimination on the basis of sex in "any education program or activity receiving Federal financial assistance," yet does not define what an "education" program is. 20 U.S.C. § 1681 (2015). Plaintiff asserts that Title IX covers the Defendant's residency program as an education program or activity, while Defendant disputes this conclusion.

 Although both parties cite numerous interpretations of Title IX generally and opinions from a variety of contexts dealing with various classifications of medical residencies, there is no holding on this issue from the Supreme Court or the Third Circuit. There are also no specific or viable circuit court precedents,[1] and the few district court opinions examining the question are diverse in their analysis and conclusions. E.g., Loewen v. Grand Rapids Med. Educ. Partners, No. 1:10-CV-1284, 2012 WL 1190145, at *12 (W.D. Mich. Apr. 9, 2012) (noting, but not deciding, that the court "tends to agree" with an argument that two hospitals were not education programs or activities); Crandell v. N.Y. Coll. of Osteopathic Med., 87 F. Supp. 2d 304, 307 n.5 (S.D.N.Y. 2000) ("residency positions primarily involve employer-employee relationships and therefore properly are governed by Title VII, rather than Title IX.").

 The Court concludes that Defendant has the better argument supporting a narrow construction of Title IX. As discussed below, Title IX's statutory text, concepts of plain

---

[1] One case from the First Circuit held in passing that a medical resident was both a student and an employee. Lipsett v. Univ. of P.R., 864 F.2d 881, 897 (1st Cir. 1988). Lipsett, however, has been abrogated in substantial part by the Supreme Court's decision in Gebser v. Lago Vista Independent School District, 524 U.S. 274, 286 (1998). Gebser rejected the Lipsett court's attempt to equate Title IX to Title VII by noting conceptual differences between the statutes and setting a higher bar for institutional liability under Title IX (actual knowledge and deliberate indifference) than is applied in Title VII cases.

language interpretation, Title IX's legislative history, and principles of judicial restraint all compel this conclusion.

### 1. Title IX's Statutory Language and Plain Meaning Interpretation

As noted, Title IX only applies to an <u>education</u> program or activity. The American Heritage Dictionary defines "education" both broadly in a colloquial sense of gaining experience ("the knowledge or skill obtained or developed by a learning process"; "an instructive or enlightening experience") and narrowly in the sense of a more formalized system of importing knowledge or skills ("a program of instruction of a specified kind or level"). (4th ed. 2009). Famous authors have recognized that "education" can be more encompassing than just time spent in a classroom.[2]

Defendant's position, which Plaintiff never satisfactorily answers, is that medical residents, having already achieved their M.D. or D.O. degree, are employees of a hospital. Residents do not pay tuition or receive a degree, but instead are paid for their services, are responsible for patient care and are protected by labor laws. No person familiar with our medical culture would confuse a medical student from a medical resident.

Plaintiff argues that because a medical residency program such as Defendant's contains educational aspects, Title IX governs its operation. That argument, however, leads to an endless road. If in using the term "education" Congress intended any experience conveying skills or knowledge, Title IX would govern any interaction in which one party could potentially learn something.

The Court also relies by analogy on two other provisions of the statute: 28 U.S.C. § 1687 (2015), which was added to Title IX in 1988 to define the phrase "program or activity" to mean

---

[2] Most notably, Mark Twain is commonly attributed with having said "I have never let my schooling interfere with my education" even though the attribution has not been verified. <u>Education</u>, http://www.twainquotes.com/Education.html (last visited Jan. 25, 2016).

"all of the operations of . . . an entire corporation, partnership, or other private organization . . . if assistance is extended to such corporation . . . as a whole, or ; which is principally engaged in the business of providing . . . health care,";[3] and 20 U.S.C. § 1681(c) (2015), which defines "educational institution" to be "any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education." In enacting Section 1687, Congress overruled Grove City College v. Bell, 465 U.S. 555, 575 (1984), a case holding that Title IX only applied to specific education programs or activities receiving federal funding and not to all programs of the covered institution. Section 1687 did not, however, change or expand Title IX's core requirement that the statute only covers "education" programs.[4] The definition of "educational institution," unchanged in Section 1681(c), clearly contemplates cabining Title IX to "education" programs in the sense of schooling. Applying Title IX to Defendant's residency program would therefore violate Title IX's plain legislative text.

To be sure, medical residents are working hard and receiving valuable training in their chosen medical specialty or sub-specialty. Nevertheless, there is a fundamental difference between medical school, which for consideration (i.e., tuition) educates students to become doctors and awards an appropriate degree at the conclusion of its (usual) four year program, and a medical residency program. In a residency program, the resident (for consideration, i.e., a salary) provides care to patients. The workload and responsibilities of medical residents are well

---

[3] Although at first blush Section 1687 appears to sweep in anything that Defendant (a private hospital) does, the bill specifically noted that "Nothing in the amendments made by this Act shall be construed to extend the application of the Acts so amended to ultimate beneficiaries of Federal financial assistance excluded from coverage before the enactment of this Act." Civil Rights Restoration Act of 1987, Pub. L. No 100–259, 102 Stat. 28 (1988). As noted below, Title IX's legislative history supports the inference that a private sector employee such as Defendant was excluded from Title IX's coverage at the time Title IX passed because Defendant was already covered by Title VII. H.R. Rep. No. 554, 92d Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Admin. News 2462, 2512.

[4] This stands in stark contrast to Title VI of the Civil Rights Act of 1964, which prohibits discrimination in any program or activity under the same definition without the "education" limitation. 42 U.S.C. 2000d et seq. (2015). The same law amended the definitions of "program or activity" in both Title VI and Title IX. Civil Rights Restoration Act of 1987, Pub. L. No 100–259, 102 Stat. 28 (1988).

documented, but they do not qualify as students. The fact that residents or hospitals may themselves consider the training received in residency as including "education" does not ipso facto, as plaintiff appears to argue, turn a residency program into an education program, as that term is used in Title IX.

### 2. Title IX's Legislative History

As multiple courts have noted, Title IX's legislative history suggests that Title IX was passed to remove an exemption in Title VII for employment discrimination occurring in educational institutions. H.R. Rep. No. 554, 92d Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Admin. News 2462, 2512 ("One of the single most important pieces of legislation which has prompted the cause of equal employment opportunity is Title VII of the Civil Rights Act of 1964. . . . Title VII, however, specifically excludes educational institutions from its terms. [Title IX] would remove that exemption and bring those in education under the equal employment provision."). This legislative history compels the interpretation that a private sector employer like Defendant, in contrast to an educational institution, was already considered covered exclusively by Title VII when Title IX was enacted.

This distinction is important because in this case, Plaintiff is attempting to use Title IX to circumvent Title VII's administrative requirements. See 42 U.S.C. § 2000e-5(e) (2015) (requiring filing of a charge with the EEOC within 180 days of the alleged unlawful employment practice). Plaintiff's counsel conceded at the October 1, 2015 hearing that Plaintiff is pursuing a Title IX claim because recovery under Title VII is barred for failure to make the required administrative filing within the requisite timeframe. Several courts have held that even within the context of employment discrimination in educational institutions, such circumvention is improper. See McLaughlin v. State Sys. of Higher Educ., No. CIV. A. 97-CV-1144, 1999 WL

239408, at *2-3 (E.D. Pa. Mar. 31, 1999); Glickstein v. Neshaminy Sch. Dist., CIV. A. 96-6236, 1997 WL 660636, at *15 (E.D. Pa. Oct. 22, 1997) ("Congress did not intend that private plaintiffs be able to circumvent the remedial process of Title VII and its state analogs merely by framing a complaint in terms of Title IX."). Absent explicit Congressional authorization for Title IX plaintiffs to be exempted from Title VII's carefully crafted administrative scheme, the Court concludes that Title VII should be the exclusive avenue for relief (particularly when, as here, the employer is not an educational institution).

### 3. Judicial Restraint

Plaintiff is asking the undersigned, as part of the judicial branch of our government, to include Plaintiff within the scope of a statute when there is no clear language requiring inclusion and no legislative history supporting such an interpretation – assuming arguendo legislative history should be used. Simply put, "it [is] not the role of the District Court . . . to rewrite statutes." See Planned Parenthood of Cent. N.J. v. Farmer, 220 F.3d 127, 140 (3d Cir. 2000). To interpret Title IX to cover Defendant's residency program would, by judicial fiat, extend Title IX coverage to over thousands of individuals serving in medical residencies at hundreds of institutions. This is not the function of a judge.

According, the Court concludes that Plaintiff's Title IX claims must fail as a matter of law because Defendant is not covered by the statute. Counts I-III will accordingly be dismissed with prejudice.

### C. Plaintiff's Hostile Environmental Claim (Count I) Is Alternatively Dismissed with Prejudice as Untimely

Defendant also argues that Count I is time barred. In assessing the timeliness of employment discrimination allegations under Title VII, the Supreme Court distinguishes discrete acts such as a decision to terminate from hostile environment harassment. Nat'l R.R. Passenger


Corp. v. Morgan, 536 U.S. 101, 110 (2002). The former "occur[] on the day that [they] happen[]" and are not subject to the continuing violations doctrine. Id. at 110, 114-15 (citations omitted). By contrast, the latter constitutes a single unlawful employment practice such that an entire course of conduct is timely if even just one act occurred within the limitations period. Id. at 115-17.

Plaintiff argues that the continuing violations doctrine saves the hostile environment claim from being time-barred. Her argument fails, however, for at least three reasons.

First, it is unclear if the continuing violations theory applies to hostile environment sexual harassment claims under Title IX. See Gjeka v. Del. Cty. Cmty. Coll., Civil Action No. 12–4548, 2013 WL 2257727, at *5 (E.D. Pa. May 23, 2013) ("With no precedent being cited to the contrary, the Court will not expand the continuing violations theory beyond its application to a hostile work environment claim under Title VII, which is not changed [sic] in this case.").

Second, Plaintiff's contemporaneous complaints about Roe's behavior undercut applicability of the continuing violations doctrine. See Fusco v. Bucks Cty. of Pa., Civil Action No. 08–2082, 2009 WL 4911938, at *8 (E.D. Pa. Dec. 18, 2009) (citations omitted) ("[T]he continuing violation theory is not viable where a plaintiff was aware of, and had complained about, hostile treatment because allowing the plaintiff to avoid the statutory timely filing requirement by invoking the continuing violations doctrine would be inconsistent with the doctrine's equitable premise that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.").

Third, the continuing violations theory fails here even assuming it applies in general because Plaintiff does not allege an actionable event of hostile environment harassment within the limitations period. The Third Circuit has applied the continuing violations doctrine to hostile

environment harassment only when an act within the limitations period "involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (emphasis added).

Plaintiff alleges two events occurred within two years of Plaintiff's first complaint, neither of which is similar to the pattern of hostile environment harassment: the decision to terminate Plaintiff's residency on April 20, 2013, and Roe's advocating for Plaintiff's dismissal at the appeal hearing on April 24.

The decision to terminate Plaintiff's residency is a discrete event that is actionable in its own right as retaliation or quid pro quo harassment, meaning it cannot simultaneously form the basis for a hostile environment claim. Yan Yan v. Pa. State Univ., No. 4:14-CV-01373, 2015 WL 3953205, at *13 (M.D. Pa. June 29, 2015) (denial of PhD constitutes discrete act such that it cannot trigger continuing violations doctrine under Title IX); Santee v. Lehigh Valley Health Network, Inc., Civil Action No. 13–3774, 2013 WL 6697865, at *7 (E.D. Pa. Dec. 19, 2013) ("Plaintiff's termination on June 30, 2010, however, is a discrete act and is not a component of a hostile work environment claim.").

As for Roe's conduct at the April 24 hearing, Plaintiff does not allege that Roe made sexualized comments or that he touched her in a sexual way at the hearing, only that he advocated for her dismissal. Roe's conduct, in other words, was not similar to the alleged pattern of harassment and therefore cannot be considered a continuing violation. See Guevara v. Marriott Hotel Servs., Inc., No. C 10-5347 SBA, 2012 WL 4097721, at *6-7 (N.D. Cal. Sept. 17, 2012) (denying application of continuing violations rule because "the SAC does not allege facts showing that the statements made during the arbitration hearing, i.e., the alleged discriminatory acts within the limitations period, are sufficiently related to or similar in kind to the alleged

discriminatory acts that occurred outside the limitations period, i.e., the incidents that occurred during his employment.").

Accordingly, Count I is time barred.

### D. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

In light of the disposition of Plaintiff's Title IX claims outlined above, no federal claims remain in this litigation. Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff's three state law claims. Those claims shall be dismissed without prejudice for refiling.

### III. Conclusion

Because Defendant's residency program is not an education program or activity, Plaintiff's Title IX claims fail as a matter of law. Plaintiff's hostile environment claim additionally fails for being time-barred, and the Court will exercise its discretion to dismiss the pendent state law claims without prejudice.

An appropriate Order follows.

O:\CIVIL 15\15-2085 doe v. mercy catholic\15cv2085.2016.01.25 ruling on MTD.doc