IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 16-1247

JANE DOE

Appellant/Plaintiff,

vs.

MERCY CATHOLIC MEDICAL CENTER, et al.,

Appellees/Defendants

**APPELLANTS' REPLY BRIEF**

APPEAL FROM GRANT OF MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM ON JANUARY 26, 2016 IN THE
UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
AT CIVIL ACTION NO. 2:15-CV-02085

Joshua Boyette, Esq. (PA #309863)

SWARTZ SWIDLER LLC
1101 Kings Highway North Suite 402
Cherry Hill, New Jersey 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

Attorneys for Appellant

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

I.   LEGAL ARGUMENT.................................................................1

INTRODUCTION...........................................................................1

A. Title IX is not limited to entities which are principally engaged in education, but rather extends to any private corporation which operates an educational program and which receives federal funding.................................4

   a.   Defendant misconstrues the statutory text of Title IX to claim that an entity covered by Title IX must be an educational institution. .....................4

   b.   Defendant offers no reason why the Court should reject the views of the Second, Eighth, and Ninth Circuit.................................................................14

   c.   The Court should defer to the Departments of Education and Health and Human Services' regulations and interpretations of said regulations under *Chevron* and *Auer*. ..............................................................................17

B. Because medical residencies are educational, Title IX offers a private right of action to residency participants with respect to discrimination in their educational opportunities...................................................................................19

   a.   Neither Defendant nor the Hospital & Healthsystem Association of Pennsylvania dispute the educational nature of medical residencies. ........19

   b.   Title VII does not preempt Title IX coverage for student-employees asserting claims of educational as oppposed to employment discrimination. 20

c.  Title VII coverage is insufficient for students-employees because its features are ill-suited to the educational environment.................................21

C.  The Court should not address Defendant's argument that it is excluded from Title IX coverage because it did not receive federal funding.................23

a.  Defendant's argument that it is not a recipient of federal funds under Title IX—set forth for the first time in this litigation in a footnote to its opposition appeals brief—has been waived, and the Court should not consider it.........................................................................................................23

b.  Even were the Court to consider Defendant's federal funding argument, case law demonstrates that Medicare payments constitute federal funding in analogous statutes such as Title VI which also purport to exclude payments from the federal government for contracts of insurance or guaranty.........................................................................................................26

CONCLUSION..............................................................................................29

II.  CERTIFICATION OF BAR MEMBERSHIP.............................................30

III.  CERTIFICATION OF IDENTICAL COMPLIANCE OF E-BRIEF ....31

IV.  CERTIFICATE OF VIRUS CHECK........................................................32

V.  CERTIFICATE  OF  COMPLIANCE  WITH  TYPE-VOLUME LIMITATION ..................................................................................................33

VI.  CERTIFICATE OF SERVICE UPON COUNSEL ..................................34

# TABLE OF AUTHORITIES

**Cases**

*Alegria v. Williams,* 314 Fed. Appx. 687 (5th Cir. 2009) (O'Connor, J., ret.).........17

*Talk Am., Inc. v. Mich. Bell Tel. Co.,* 544 U.S. 50 (2011).......................................23

*Auer v. Robbins,* 519 U.S. 452 (1997) ....................................................................23

*Barefoot Architect, Inc., v. Bunge*, 632 F.3d 822 (3d Cir. 2011) ...........................29

*Bowen v. American Hospital Ass'n.*, 476 U.S. 610 (1986)......................................33

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837

   (1984)...................................................................................................................22

*Consolidated Rail Corp. v. Darrone*, 465 U.S. 624 (1984)....................................33

*Grove City College v. Bell*, 456 U.S. 555 (1984) ...................................................16

*Harris v. City of Philadelphia*, 35 F.3d 840 (3d Cir. 1994) ...................................29

*In re Mystic Tank Lines Corp.*, 544 F.3d 524 (3d Cir. 2008) .................................29

*Jeldness v. Pearce,* 30 F.3d 1220 (9th Cir. 1994)...................................................20

*John Wyeth & Brother Ltd. V. Cigna Int'l Corp.,* 119 F.3d 1070 (3d Cir. 1997) ...30

*Klinger v. Dep't of Corr.*, 107 F.3d 609 (8th Cir. 1997) .........................................20

*Lesende v. Borrero*,  752 F.3d 324 (3d Cir. 2014)..................................................29

*Lincoln v. Magnum Land Servs., LLC*, 560 Fed. Appx. 144 (3d Cir. 2014) ...........29

*McCormick ex rel. McCormick v. School Dist*., 370 F.3d 275 (2d Cir. 2004) ........22

*NAACP v. Wilmington Medical Center, Inc.*, 599 F.2d 1247 (3d Cir. 1979)..........32

*O'Connor v. Davis,* 126 F.3d 112 (2nd Cir. 1997) ...................................... 10, 13, 19

*Rannells v. Hargrove*, 731 F. Supp. 1214 (E.D.Pa. 1990).......................................32

*Roubideaux v. N.D. Dept. of Corr. & Rehab,* 570 F. 3d 966 (8th Cir. 2009)..........21

*Simmons v. Philadelphia*, 947 F.2d 1042 (3d Cir. 1991) .......................................30

*Talk Am., Inc. v. Mich. Bell Tel. Co.,* 544 U.S. 50 (2011)......................................23

*United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, *cert. denied*, 469 U.S. 1189

  (1985)......................................................................................................33

*United States v. Turner*, 718 F.3d 226 (3d Cir. 2013) .................................... 29, 31

*Williams v. Fields*, 535 Fed. Appx. 205 (3d Cir. 2013)..........................................30

## Statutes

20 U.S.C. 1681 ........................................................................................ 12, 13, 14

20 U.S.C. 1687 .............................................................................................. passim

20 U.S.C. 1687(3)(A)(i) ................................................................................. 11, 12

20 U.S.C. 1687(3)(A)(ii).......................................................................... 10, 11, 12

20 U.S.C. 1687(3)(B) ..................................................................................... 11, 13

20 U.S.C. Sec. 1682 .............................................................................................32

42 U.S.C. Sec. 2000d-1........................................................................................32

Civil Rights Restoration Act of 1987, 102 Stat. 28 (1988) ...................................16

## Other Authorities

S. Rep. No. 100-64 ................................................................................18

S. Rep. No. 404 ....................................................................................24

## Rules

Fed. R. App. P. Rule 28 .......................................................................30

Third Circuit Rule 21 ...........................................................................30

## Regulations

34 C.F.R. 106.31(a) ......................................................................... 22, 23

45 C.F.R. 86.31(a) ........................................................................... 22, 23

*Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199 (2015) ..........................23

## I.   <u>LEGAL ARGUMENT</u>

### INTRODUCTION

Appellant-Plaintiff ("Plaintiff") relies primarily on her initial briefing and the United States' *amicus* brief to rebut the arguments made by Appellee-Defendant ("Defendant") in its opposition briefing. Nevertheless, Defendant's argument warrants reply insofar has Defendant has made new arguments or presented its arguments differently than it did before the District Court.

First, though Plaintiff addresses this at the end of this Reply Brief, Defendant has for the first time on appeal attempted to assert an entirely new theory as to why it is not covered by Title IX, namely that the Direct Graduate Medical Education ("DGME") payments it receives through Medicare to subsidize its residency program is a "contract of insurance or guaranty" and thereby excluded from the type of federal financial assistance that triggers Title IX coverage. As set forth below, this argument is wholly new, and is waived on appeal. Additionally, Defendant is substantively wrong, as this Court has held that Medicare payments constitute federal financial assistance notwithstanding the contract of insurance exception in the analogous Title VI context.

Second, Defendant argues that the CRRA—by restoring institution-wide coverage to Title IX after the Supreme Court in *Grove City* narrowed Title IX's application to the program or programs directly receiving federal money—limits

Title IX's application to entities "principally engaged in the business of providing education." Defendant makes this argument despite the fact that the CRRA explicitly makes clear that Title IX applies to instrumentalities of the state, formal educational institutions, and private corporations, regardless of their purpose. Defendant's argument is wholly inconsistent with the statutory text, and would render much of the CRRA an incoherent nullity. Accordingly, this argument should be rejected.

Similarly, Defendant argues that the Court should disregard the position of the Department of Education and the Department of Health and Human Services in interpreting its own regulations to include medical residencies as a type of occupational training covered by these agencies' regulations implementing Title IX. Defendant's argues that these interpretations are inconsistent with Defendant's favored construction of the CRRA, which Defendant contends limits Title IX to entities principally engaged in the business of education. Because the CRRA does not say what Defendant claims it says, and because the U.S. agencies' interpretations are consistent with their own regulations and Title IX, the agencies' position is entitled to *Auer* deference and should be adopted.

Finally, Defendant argues that regardless of whether it is covered by Title IX, the existence of Title VII as a remedy for employment discrimination means that there is no private right of action for employment discrimination under Title IX. While Plaintiff has argued extensively in her opening brief why Title IX does

provide a private right of action for employees of education programs, Plaintiff points out below that the issue here is a simpler one insofar as Plaintiff asserts her claim under Title IX not as an employee, but rather as a student, i.e., as a participant in Defendant's education program. The Court need not decide whether a non-student employee (such as a teacher) in Defendant's residency program could assert a claim under Title IX. Here, the far simpler question is whether the fact that Plaintiff is both a student and an employee precludes her from asserting claims of education discrimination, i.e., exclusion from the educational program operated by Defendant, under Title IX. Because education discrimination is different than employment discrimination, permitting a student-employee to bring a Title IX claim does not undermine Title VII or its scheme for remedying employment discrimination, as under this holding, a Title IX claim will only be able to be brought in circumstances when an employee is also being excluded from participating in ***their own*** educational experience. Moreover, the fundamental differences between at-will employment and an academic program such as a medical residency, with strict application procedures and a once-a-year application season, makes Title VII, with its administrative exhaustion requirements and short statute-of-limitations, an inadequate vehicle for remedying education discrimination.

Accordingly, for the reasons set forth in detail below, and for the reasons set forth in Plaintiff's opening brief and in the *amicus brief* of the United States, the

Court should hold that Defendant is covered by Title IX, that Plaintiff may assert a Title IX claim against Defendant, and should reverse the order of the District Court and remand this case for further proceedings.

## A. Title IX is not limited to entities which are principally engaged in education, but rather extends to any private corporation which operates an educational program and which receives federal funding.

### a. Defendant misconstrues the statutory text of Title IX to claim that an entity covered by Title IX must be an educational institution.

Defendant argues that Title IX, as amended by the Civil Rights Restoration Act of 1987 ("CRRA"), only extends to entities "principally engaged in the business of providing education," and that as a private hospital principally engaged in providing health services, Defendant cannot as a matter of law operate an educational program or activity, and therefore, is excluded from the coverage of Title IX. *See* Opp. Brief at 11-12.

This argument conflicts with the actual statutory text, and conflicts with the interpretation of both the Second Circuit and the interpretation of this statute and its accompanying regulations by the U.S. Department of Education and the U.S. Department of Health and Human Services.

Defendant's argument is convoluted and relies primarily on grammar. Defendant sets forth the following syllogism: (1) Title IX only extends to educational programs or activities; (2) The CRRA amended "program or activity"

to mean "all operations of" "an entire corporation, partnership, or other private organization, or an entire sole proprietorship" "which is principally engaged in the business of providing education[.]" 20 U.S.C. 1687(3)(A)(ii); (3) Defendant is not a corporation principally engaged in the business of providing education; (4) Therefore, Title IX does not apply to Defendant.

However, in making this argument, Defendant construes the statutory text in a way which would have this Court render null whole sections of the text. As Defendants' admit, under "ordinary rules of construction," courts "give content to the entire phrase selected by Congress." *See* Opp. Brief at 12 (citing *O'Connor v. Davis,* 126 F.3d 112, 117 (2nd Cir. 1997). Defendants' construction, however, would require the wholesale deletion of entire clauses of the statutory text, and accordingly, cannot be the proper reading.

Defendant's syllogism fails on its own logic because Defendant has misrepresented the second part of the syllogism, that the CRRA amended Title IX to limit its scope to entities principally engaged in providing education. This contention is patently false. The CRRA **<u>did not</u>** amend "program or activity" to mean "all operations of" "an entire corporation" "which is principally engaged in providing education." Rather, it explicitly made clear that Title IX covers the activities of private corporations, regardless of their purpose, and then stated **<u>three</u>** different definitions of "program or activity" for such private corporations related to

the extent to which a private corporation's programs and operations will be subject to Title IX. First, the CRRA extended Title IX's coverage to all operations of a private corporation **if assistance is extended to such corporation as a whole.** 20 U.S.C. 1687(3)(A)(i). Second, if assistance is only extended to some but not of all a private corporation's programs, not extended to such corporation as a whole, Title IX will nevertheless extend to all operations of a private corporation **if** the corporation is principally engaged in the business of providing either education, health care, housing, social services, or parks and recreation. 20 U.S.C. 1687(3)(A)(ii). Finally, if the private corporation **is not principally engaged in any of the 3(A)(ii) categories,** for purposes of Title IX coverage, "program or activity" and "program" mean only all the operations of the "entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended." 20 U.S.C. 1687(3)(B).

There is no language in 20 U.S.C. 1687 that limits Title IX to entities "principally engaged in education." Instead, the statutory language explicitly makes clear that Title IX extends to many different types of entities, including departments and instrumentalities of the state, 1687(1)(A), colleges and other postsecondary institutions, 1687(2)(a), local educational agencies and systems of vocational education, 1687(2)(b), private corporations and other organizations, 1687(3), and any other entity established by two or more entities described in paragraph (1), (2),

and (3). 1687(4). The "principally engaged" language that Defendant refers to in fact only delimits **one** circumstance for Title IX coverage of private corporations, namely, that if the private corporation is principally engaged in **education, healthcare, housing, social services, or parks and recreation**, federal funding of one part of the corporation extends Title IX coverage to all parts of the organization. However, the statute explicitly makes clear that private corporations who are not principally engaged in the public-service missions described in Subsection 3(A)(ii) are covered by Title IX, but only at the physical plant or single geography facility to which federal financial assistance is extended.

Defendant argues that because the term "education" modifies "program or activity" in 20 U.S.C. 1681, and because 20 U.S.C. 1687 defines "program or activity" to extend to all operations" of either an entire private corporation, or "all operations" at a particular plant or geographically distinct facility, **all of the entities described in 20 U.S.C. 1687** must be principally engaged in the business of providing education.

However, this reading nullifies the entire structure of 20 U.S.C. 1687, which explicitly states that Title IX extends to (1) private corporations who receive federal funding as a whole, regardless of their principal business purpose; 1687(3)(a)(i); (2) private corporations which are principally engaged in the business of providing healthcare, housing, social services, or parks and recreation, 20 U.S.C.

1687(3)(a)(ii); and (3) **for any other corporation, partnership, private organization, or sole proprietorship,** the entire plant or comparable geographically separate facility to which federal financial assistance is extended. 20 U.S.C. 1687(3)(b).

In other words, Defendant argues that the Court should combine the provisions of 20 U.S.C. 1681 and 20 U.S.C. 1687 as follows:

> "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under ] [(a)(1) all the operations of a private corporation **principally engaged in the business of education** that receives federal funding as a whole; (a)(2) all the operations of a private corporations which are principally engaged in the business of providing  education, ~~healthcare, housing, social services, or parks and recreation~~, or (b) for any other corporation **principally engaged in the business of education**, all the operations of the entire plant or comparable geographically separate facility to which federal financial assistance is extended."

Thus, Defendants' reading of the statute involves interpolating a "**principally engaged in education**" limitation in two sections of the statute where it does not appear, (3)(a)(i) and (3)(b), and **deleting** the section of the statute explaining how Title IX coverage works for business principally engaged in providing healthcare, housing, social services, or parks and recreation.

However, under this tortured rewriting of the statute, sections (3)(a)(i) becomes identical to section (3)(a)(ii), and both become wholly inconsistent with (3)(b). Moreover, Defendants' reading requires the Court to **throw out** more than

half the language of (3)(a)(ii). Such rewriting of statutes is not permitted, *see*

*O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir. 1997) ("we are bound under ordinary

rules of construction to give content to the entire phrase selected by Congress"), but

luckily, it is profoundly unnecessary, as simple grammar explains the proper way of

reading 20 U.S.C. 1681 with 20 U.S.C. 1687.

The proper combination of the two sections that does not make the statutory

text incoherent and does not require the Court to ignore an entire phrase selected by

Congress is as follows:

> "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under ] (a)(1) all the **educational** operations of a private corporation that receives federal funding as a whole; (a)(2) all the **educational** operations of a private corporation which is principally engaged in the business of providing education, healthcare, housing, social services, or parks and recreation; or (b) for any other private corporation, all the **educational** operations of the entire plant or comparable geographically separate facility to which federal financial assistance is extended."

Under this reading, no part of the statute is rendered a nullity, and, perhaps

more importantly, each section provides an independent and consistent meaning

which works with the rest of the text.

Defendant describes an example of how Plaintiffs' reading would lead to a

supposed absurd result, by describing how, in an arts context, if the phrase

"program" was defined to mean "all operations of any entity that is principally

engaged in the business of music, theater, visual arts, or dance," and then construing

the phrase "music program" in the same statute to mean "all of the operations of an entity that is principally engaged in the business of visual arts." However, the absurdity of Defendant's example stems from Defendant's same misreading of the statute, Defendant's failure to properly apply the modifying adjective "music" to the term "program." Like in the actual statutory text, in order to give content to the actual language of the example, the modifier "music" must come after the term "all," so that "music program" in this context would mean "all of the music operations of an entity that is principally engaged in the business of visual arts." That sentence is anything but absurd.

For instance, the Philadelphia Museum of Art conducts a program called Art After 5 in which it stays open late and puts on music concerts for its patrons. *See http://www.philamuseum.org/artafter5* (last visited October 21, 2016). Under Defendant's hypothetical statute, Art After 5 would constitute musical program of an entity principally engaged in the business of visual arts. An ordinance of Philadelphia that proceed to regulate the hours of **all music programs** within the city, such that it applied to all entities principally engaged in the business of music, performing arts, or visual arts, **but only regulated the musical programs of such entities** is not an illogical or absurd ordinance. Likewise, Title IX, as amended by the CRRA, is not an absurd statute because it regulates all the educational programs of entities principally engaged in the business of providing healthcare.

Defendant suggests however that Plaintiffs' reading of Title IX, as amended by the CRRA, to reach only the educational programs of a private healthcare organization undermines the institution-wide coverage that was imposed by the CRRA in order to reverse the Supreme Court's decision in *Grove City* that found that Title IX coverage was limited to the specific program that received federal funding. *See* Civil Rights Restoration Act of 1987, 102 Stat. 28 (1988); *Grove City College v. Bell*, 456 U.S. 555 (1984).  However, limiting Title IX coverage to **education programs**  operated by a federal funding recipient does not undermine the CRRA's purpose, as the CRRA amendment means, in the Title IX context, that Title IX will extend to a federal funding recipient's education programs **even if** the federal funding is only extended to a non-education program of the recipient, as long as the recipient is principally engaged in the business of providing healthcare, housing, social services, or parks and recreation.

That this limitation of Title IX to the educational programs of an entity is the proper reading of Title IX as amended by the CRRA is demonstrated by the following hypothetical: New York University, a private corporation principally engaged in education, operates a publishing arm called NYU Press. In order to celebrate Women's History Month, NYU Press promotes a contest online whereby any woman can submit an entry for a raffle whose prize is a series of books on women's history worth $500. NYU receives federal funding in the form of grants.

-11-

Can a man sue NYU Press under Title IX for operating this women's-only raffle? Under Defendant's reading of the CRRA, that man could sue NYU Press, because NYU is an entity that is principally engaged in the business of education that receives federal funding, and under the CRRA, **all operations of such an entity** are included in the term **program or activity**. However, this raffle is demonstrably not educational, and whether NYU permits men unaffiliated with the university to participate in the raffle has nothing to do with ensuring equal access to education on the basis of sex/gender.

To take the hypothetical one-step further, NYU also has an endowment fund that invests in the stock market. If NYU chose to invest in women-owned firms, could a male-owned firm sue NYU under Title IX for that discriminatory investment decision? Plaintiff submits that the answer is no, because NYU's investment operations are not educational, and the CRRA did "**nothing to alter Title IX's underlying requirement that the program or activity must be educational.**" *Alegria v. Williams,* 314 Fed. Appx. 687, 692 (5th Cir. 2009) (O'Connor, J., ret.).

In other words, Defendant's argument that the CRRA created institution-wide coverage, and thus, the educational limit in Title IX must be read with the CRRA so-as-to a) limit Title IX to formal educational institutions; and b) extend Title IX coverage to all operations of those educational institutions, whether or not the program or activity complained of is educational, is unsupported by the text or case

law and leads to absurd results. The proper effect of the CRRA is to extend Title IX coverage to all educational operations of an entity which receives federal funding, regardless of whether the educational program in question is the direct recipient of the federal funding.

This reading is also consistent with the legislative history of the CRRA, which provided that the CRRA's reversal of *Grove City* would operate in the manner set forth by Plaintiff above:

> "If a private hospital corporation is extended federal assistance for its emergency rooms, all the operations of the hospital, including for example, the operating rooms, the pediatrics department, admissions, discharge offices, etc., are covered by Title VI, Section 504, and the Age Discrimination Act. Since Title IX is limited to education programs or activities, it would apply only to the students and employees of education programs operated by the hospital, if any.

S. Rep. No. 100-64, at 17.

Likewise, the reading is consistent with the Second Circuit's decision of *O'Connor*, in which the Second Circuit recognized that the educational limitation on "program activity" meant that a private entity with an educational component that receives federal funding is subject to Title IX regulation if it "could reasonably considers mission to be, <u>at least in part</u>, educational." *O'Connor*, 126 F.3d at 117.

Accordingly, for the reasons set forth above, Defendants' construction of Title IX is wrong, illogical, and unsupported by the text, and should be rejected. The CRRA makes clear that Title IX can extend to private corporations principally

-13-

engaged in healthcare. The Court should decline Defendants' invitation to ignore this clear statutory text.

### b. Defendant offers no reason why the Court should reject the views of the Second, Eighth, and Ninth Circuit.

Defendant also argues that the Third Circuit should ignore case law from the Second, Eighth, and Ninth Circuit Courts of Appeal which declined to read into Title IX a limitation that the entity in question had to have a principal purpose of education in order to be covered by Title IX. Defendant states that the Second Circuit applied an "erroneous lesser standard" at odds with Defendant's construction of 20 U.S.C. 1687(3)(A)(ii). *See* Defendant Brief at 19; *O'Connor*, 126 F.3d at 117-118. Defendants' only argument for why the Second Circuit in *O'Connor* was wrong to state that an entity only needed to have a mission that was in part educational is its own convoluted statutory construction which, as explained above, is at odds with the statutory text. The Court should decline to accept Defendant's invitation to create a circuit split based on Defendant's incorrect analysis of 20 U.S.C. 1687.[1]

---

[1] To the extent that Defendant states that even under *O'Connor*'s analysis, Defendant should not be covered by Title IX because only its medical residencies have a educational mission, not the larger corporation, such argument is specious. Defendant had admitted on its website in its description of its residency programs that it operates these programs because of its corporate commitment to education. That Defendant's specific institutional mission statement does not mention education does not mean that Defendant's mission/purpose/goals/activities are not "in part educational." More importantly, the true test of missions is not in what a corporation's public relations material states, but rather in what activities that

-14-

Likewise, Defendant argues that the Ninth Circuit in *Jeldness v. Pearce,* 30 F.3d 1220 (9th Cir. 1994), and the Eighth Circuit in *Klinger v. Dep't of Corr.*, 107 F.3d 609 (8th Cir. 1997), erred in applying Title IX to educational programs operated by state prisons because "**these decisions did not closely parse the meaning of 'education program or activity**.'" *See* Defendant's Brief at 20. Again, like with *O'Connor,* Defendant does not **distinguish** *Jeldness* or *Klinger* from the instant case; rather, Defendant invites the Third Circuit to split from the Eighth Circuit and Ninth Circuit and impose a wholly new limitation on Title IX that would eviscerate its application with respect to entities who operate educational programs but whose principal purposes are not educational.

However, as set forth above, it is Defendant who has not closely parsed the meaning of "education program or activity," as their favored construction is incoherent and contradicts the plain language of the CRRA. Accordingly, Defendant has provided no persuasive argument as to why the Third Circuit should depart from the conclusions of the Ninth and Eighth Circuit that Title IX extends to entities which are not principally engaged in education, in keeping with its plain language.

---

corporation engages in. Operating a medical residency requires a significant commitment of time and resources; thus, it is the operation of the residency program that defines Defendant's mission as being in part educational, not the statements it has published in its public relations material.

Defendant also attempts to suggest that the Eighth Circuit has changed its view of Title IX, by suggesting that in *Roubideaux v. N.D. Dept. of Corr. & Rehab,* 570 F. 3d 966 (8th Cir. 2009), the Eighth Circuit in some way backed away from its conclusion that prisons--whose missions are inarguably not educational—are covered by Title IX. Defendant's argument significantly misrepresents the holding of *Roubideaux.*

*Roubideaux* did not hold that a prison program was not covered by Title IX because prisons are not entities principally engaged in education; instead, the court simply held that the specific program in question—an inmate work program—was not sufficiently educational to fall within Title IX, distinguishing the work program, which offered jobs to inmates, from actual vocational training that the prison also offered, and which would be covered by Title IX.

The Eighth Circuit in *Roubideaux* made clear that its analysis as to whether Title IX applied looked to the character of the specific program in which the discrimination was alleged to have occurred, not the primary purpose of the federal-funding recipient, i.e., the prison. 570 F.3d at 977. Accordingly, *Roubideaux,* far from supporting Defendant's position, instead demonstrates that even after the CRRA, analysis of Title IX applies depends on a program-specific, not institution-wide, determination of whether the program is educational.

Accordingly, case law from three different Circuit Courts of Appeal contradict Defendants' position that Title IX only applies to entities whose primary purpose is education, providing further reason for this Court to reject Defendant's argument and to instead find that Defendant is covered by Title IX because its residency programs are educational programs.

### c. The Court should defer to the Departments of Education and Health and Human Services' regulations and interpretations of said regulations under *Chevron* and *Auer*.

As set forth by the United States in the amicus brief filed on behalf of the Department of Justice, Department of Education, and Department of Health and Human Services, to the extent that the term "educational program or activity" is ambiguous, the Department of Education and Department of Health and Human Services have promulgated regulations that define this term to include occupational training operated by a recipient which receives federal financial assistance. 34 C.F.R. 106.31(a); 45 C.F.R. 86.31(a). *See* United States Amicus Brief at 14 ("U.S. Amicus"). These regulations were promulgated pursuant to notice and comment rule-making, and are entitled to *Chevron* deference. *See McCormick ex rel. McCormick v. School Dist.*, 370 F.3d 275, 287-288 (2d Cir. 2004); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The Department of Education and Department of Health and Human Services have further set forth in their amicus brief that it considers medical residencies to be

occupational training. *See* U.S. Amicus at 14.  An agency's interpretation of its own regulations, unless plainly erroneous or inconsistent with the regulation, is entitled to deference under *Auer v. Robbins,* 519 U.S. 452 (1997), even when the interpretation is advanced in an amicus brief. *See Talk Am., Inc. v. Mich. Bell Tel. Co.,* 544 U.S. 50, 59, 61-62 (2011).

Defendant argues that the agencies' interpretation of their own regulation is inconsistent with the plain language of the statute, because it would extend Title IX coverage to entities which operate occupational training programs but whose principal purpose is not education. *See* Defendant Brief at 22-23. Defendant argues that the agencies' interpretation is not a permissible construction of the statute for the same reason it argues that Title IX's statutory text explicitly excludes private hospitals from coverage, i.e., that Title IX operates upon the language of the CRRA to limit the private corporations set forth in Section 1687(3) to those principally engaged in education. However, Defendant's construction is anything-but the plain language of the statute; in fact, as set forth above, the statutory language explicitly states that the entities covered under 1687(3) include **<u>entities principally engaged in providing healthcare</u>**. Given same, the agencies' interpretation is not inconsistent with the plain language of the statute.

Defendant has not advanced any evidence that the agencies' interpretation is anything but the agencies' fair and considered judgment on the matter in question,

or that it conflicts with the language of 34 C.F.R. 106.31(a) and 45 C.F.R. 86.31(a).
*See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1208 fn. 4 (2015).

Accordingly, that the agencies at issue interpret Title IX and its implementing regulations to cover medical residency programs is an additional reason to reverse the order of the District Court dismissing Plaintiffs' Title IX claims.

**B. Because medical residencies are educational, Title IX offers a private right of action to residency participants with respect to discrimination in their educational opportunities.**

### a. Neither Defendant nor the Hospital & Healthsystem Association of Pennsylvania dispute the educational nature of medical residencies.

Neither Defendants nor the Hospital & Healthsystem Association of Pennsylvania (HHAP) dispute that the instant residency program is intensely educational. Defendants' own website discusses Defendant's extreme commitment to graduate medical education. HHAP states that medical residents are **"not merely students."**

As Plaintiff noted in her opening brief, the educational nature of medical residencies has long been recognized by Congress, and private hospitals such as Defendant receives substantial subsidies to operate its residency programs. *See* S. Rep. No. 404, 89th Cong., 1st Session, reprinted in 1965 U.S. Code Cong. & Admin. News 1943, 1977. These subsidies are not provided as an employment subsidy, but as an **educational** subsidy. *Id.* Medical residencies are referred to by the medical

community to as graduate medical education, and they are accredited by an accrediting organization that ensures that the residencies maintain high and uniform educational standards.

Thus, while Defendant and HHAP attempt to characterize medical residencies as simply being occupational training, that characterization is belied by the intense educational nature of medical residencies which they cannot and do not dispute.

### b. Title VII does not preempt Title IX coverage for student-employees asserting claims of educational as oppposed to employment discrimination.

Defendant spends much of its opposition arguing that Title IX does not contain an implied right of action for employment discrimination, and that such an action must proceed under Title VII. Plaintiff has primarily addressed these arguments in her opening brief. However, it is worth noting that the cases Defendant relies on for this proposition categorically do not involve individuals who are both students and employees. In fact, Defendant all but concedes this point, but simply argues that medical residents are not students. *See* Defendant Brief at 31. However, Defendant has not established that medical residents are not students, as set forth in Plaintiff's initial brief and above.

Thus, in the present context, the Court need not determine whether a non-student employee of an educational program has an independent right of action for gender discrimination under Title IX. The question before the court is whether an

individual who is participating in an educational program such as a medical residency should be excluded from the protections of Title IX because they are also an employee of the hospital operating the residency program.

To hold same would imply that a student employed by her university as a work-study student or as a research associate would be excluded from coverage under Title IX because she could also assert a claim under Title VII.

Equally important, Plaintiff is not claiming that the primary harm she suffered as a result of Defendant's alleged actions was a harm to her employment; though Plaintiff seeks all damages she is entitled to, including her lost stipend, the harm Plaintiff complains of is her exclusion from the residency program itself, her inability to graduate from same, and her subsequent inability to satisfy the requirements for board certification.

Nothing in the case law of Title VII or Title IX suggest that a hybrid employee-student is prohibited from asserting a Title IX claim for education discrimination merely because that education also included an employment component, the deprivation of which might be remedied by an action brought under Title VII.

### c. Title VII coverage is insufficient for students-employees because its features are ill-suited to the educational environment.

Defendant makes much of Plaintiff's failure to file an EEOC charge alleging violations of Title VII. A charge with the EEOC must be filed within either 180 or 300 days of the discriminatory conduct or be time-barred. As Defendant points out, the EEOC was set up in order to provide an opportunity for nonjudicial and speedy resolution of claims prior to invoking the machinery of the courts. However, because Plaintiff's medical residency—and other educational opportunities—are governed by an academic calendar which only allows for transfers or acceptance to comparable programs once or a few times per year, an administrative filing requirement that requires initiation of formal quasi-judicial proceedings in less than a year will be ill-suited to such claims.

Plaintiff needs to provide no evidence that employers take EEOC claims seriously; the filing of same often cause a respondent to "lawyer up," adopt a litigation posture, and proceed in an adversarial fashion. Retaliation, prohibited under Title VII, regularly involves the filing of an EEOC charge as the initiating event.

Accordingly, a student-employee who has been expelled from an educational-employment program and who must then wait until application season rolls around again would be placed in an uncomfortable position if their only remedy was the filing of an EEOC charge as the first step in bringing a Title VII lawsuit. Not having to file an EEOC charge within 180 or 300 days will allow a student-employee to

apply to another program; if accepted to a comparable program, it is likely that a significant amount of the damages from the education discrimination would be mitigated; if forced to file a charge and initiate legal proceedings, the concomitant fallout may make it far more difficult to secure another appointment. Accordingly, this is another reason that the Court should find that the existence of a Title VII remedy does not preclude a private Title IX action for an employee-student who has been subjected to education discrimination.

### C. **The Court should not address Defendant's argument that it is excluded from Title IX coverage because it did not receive federal funding.**

**a. Defendant's argument that it is not a recipient of federal funds under Title IX—set forth for the first time in this litigation in a footnote to its opposition appeals brief—has been waived, and the Court should not consider it.**

While Defendant argues primarily that it is not subject to regulation under Title IX because it is not an "education program or activity" within Title IX's meaning and purview, Defendant's Brief at 7, it now, on appeal, after having failed to raise this issue before the District Court, for the first time attempts to advance a new argument: that Mercy does not receive "federal financial assistance." *Id.* at 7 n.2. Defendant, by its failure to raise this issue and argument before the lower court, has waived the argument, and the Court ought not consider it.

The Third Circuit has held that the Court "will not consider issues that are raised for the first time on appeal." *In re Mystic Tank Lines Corp.*, 544 F.3d 524,

528 (3d Cir. 2008) (citing *Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994)). It has described this waiver rule as "well-established," "axiomatic," "consistent," and "a general rule." *See Lincoln v. Magnum Land Servs., LLC*, 560 Fed. Appx. 144, 150 (3d Cir. 2014) (*citing United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013) ("[T]o preserve an argument and avoid waiver, the argument presented in the Court of Appeals must depend on both the same legal rule and the same facts as the argument presented in the District Court.")); *United States v. Turner*, 718 F.3d 226, 235 (3d Cir. 2013) ("[I]t is a general rule that arguments raised for the first time on appeal are waived").

The waiver rule "serves several important judicial interests, including protecting litigants from unfair surprise, promoting the finality of judgments and conserving judicial resource, and preventing district courts from being reversed on grounds that were never urged or argued before it." *Lesende v. Borrero*, 752 F.3d 324, 332 (3d Cir. 2014) (internal citations omitted). It also "ensur[es] that the necessary evidentiary development occurs in the trial court, and prevent[s] surprise to the parties when a case is decided on some basis on which they have not presented argument." *Barefoot Architect, Inc., v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). In furtherance of the preference that issues be properly litigated and argued first in the lower courts, the Third Circuit has held that even "a passing reference to an issue in a brief will not suffice to bring that issue before this court on appeal." *Simmons v.*

*Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991) (citing Fed. R. App. P. Rule 28 and Third Circuit Rule 21); The Court has also held that "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Brother Ltd. V. Cigna Int'l Corp.,* 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). *See also Williams v. Fields*, 535 Fed. Appx. 205, 211 n.6 (3d Cir. 2013) ("Although Williams raises in a footnote th[is] argument . . ., he failed to raise this issue below and therefore has waived the issue.").

The Court has stated that it "depart[s] from this rule" "only in exceptional circumstances," *In re Mystic Tank Lines*, 544 F.3d, *supra*, at 528, and no such circumstances here have been alleged by Defendant; nor do such circumstances exist. *Cf. Bagot v. Ashcroft*, 398 F.3d 252 (3d Cir. 2005) (exceptional circumstances sufficient to excuse waiver found when issue was pure question of law, closely related to arguments that were raised in lower court, no additional fact-finding was necessary, proper resolution was reasonably certain, and waiver would result in substantial injustice of deporting US citizen).

Furthermore, whether Defendant receives "federal financial assistance" within the meaning of Title IX is a question of fact or a mixed question of fact and law, and should be addressed in the lower court after additional development of the evidence after remand. *See United States v. Turner*, 718 F.3d 226, 235 (3d Cir. 2013) (noting that waiver doctrine less concerning if question is a pure question of law)

This appeal is before the Court based on a motion to dismiss in which Defendant argued that it did not operate an educational program or activity, not that it was not a recipient of federal funding. In its footnote, Defendant's own argument as to this issue of federal funding asserts statements of fact (e.g., "Mercy received payment directly from HHS for services rendered to the elderly and disabled"), and for that reason does not present a pure question of law, is inapposite to the present posture of this appeal, and is therefore waived. Accordingly, the Court should not consider Defendant's alternative argument that it is not covered by Title IX because it did not receive federal funding as that term is defined in Title IX.

**b. Even were the Court to consider Defendant's federal funding argument, case law demonstrates that Medicare payments constitute federal funding in analogous statutes such as Title VI which also purport to exclude payments from the federal government for contracts of insurance or guaranty.**

As set forth above, Plaintiff contends—with significant support under Third Circuit case law—that Defendant has waived for purposes of this appeal any argument that it is not covered by Title IX because the only federal funding it receives is through Medicare. Briefly, however, even if it is true that all federal funding received by Defendant is received through the Medicare program, Medicare funding is not excluded from the type of funding that triggers Title IX coverage.

Defendant's argument is that it does not receive "federal financial assistance" within the meaning of Title IX because it receives Medicare funding which it

characterizes as "a contract of insurance." While "contracts of insurance or guaranty" are excluded from the definition of "federal financial assistance" under Title IX, case law has made clear that Medicare payments are not included within the term "contracts of insurance or guaranty."

For instance, the Third Circuit has previously ruled that federal funding to a medical center triggers the protections of Title VI, which has a "contracts of insurance or guaranty" exception to the definition of "federal financial assistance" precisely analogous to that of Title IX. *NAACP v. Wilmington Medical Center, Inc.*, 599 F.2d 1247, 1248 n.4 (3d Cir. 1979). Insofar as the "contract of insurance" exception, Title VI and Title IX are identical. *Cf.* 42 U.S.C. Sec. 2000d-1 and 20 U.S.C. Sec. 1682; *see also Rannells v. Hargrove*, 731 F. Supp. 1214, 1219 n.4 (E.D.Pa. 1990) ("[S]ection 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and section 6102 of the ADA are almost identically phrased and are treated analogously in Congress and court") (internal citations omitted).

Similarly, the Fifth Circuit, in an in-depth analysis of the "contracts of insurance or guaranty" exclusion, looked to the Congressional record and ruled that receipt of Medicare and Medicaid payments did not fall under that exclusion. In that case, *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1048 (5th Cir. 1984), *cert. denied*, 469 U.S. 1189 (1985), the Fifth Circuit addressed Baylor's argument

that "Medicare and Medicaid are insurance programs and thus exempt from the coverage of Title VI and Section 504." The court "assum[ed]" that the exception for contracts of insurance or guaranty "implicitly applies to Section 504" of the Rehabilitation Act as well as Title VI and found that "neither Medicare nor Medicaid is the type of contractual program Congress intended to exempt."

While the Supreme Court has not specifically spoken to the "contracts of insurance or guaranty" exclusion, in 1986 it expressly declined "to review the Court of Appeals' assumption that the provision of health care to infants in hospitals receiving Medicare or Medicaid payments is a part of a 'program or activity receiving Federal financial assistance.' *See Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635-36 (1984)." *Bowen v. American Hospital Ass'n.*, 476 U.S. 610 (1986).

Moreover, as noted above, even if it were accepted that the only federal funding that Defendant receives is through the Medicare program, the character of that funding is still a mixed question of fact and law, as there is no record demonstrating the amount of funding received, its itemization, or what the DGME and IME funding actually reimbursed. Accordingly, resolution of this question is inappropriate on a motion to dismiss and would require remand and further factual development of the record in any case.

Finally, because Defendant never raised this issue below, the United States did not address this issue in their *amicus* brief. To the extent the Court believes that

-28-

this issue should be resolved at this stage, Plaintiff submits that the United States should be asked for its view on this issue through supplemental briefing.

## CONCLUSION

Accordingly, for the reasons set forth above, and for the reasons set forth in Plaintiff's opening brief and in the *amicus brief* of the United States, the Court should hold that Defendant is covered by Title IX, that Plaintiff may assert a Title IX claim against Defendant, and the Court should reverse the order of the District Court and remand this case for further proceedings.

Respectfully Submitted,

/s/ Joshua S. Boyette
Joshua Boyette, Esq.
PA ID # 309863

SWARTZ SWIDLER LLC
1101 Kings Highway N. Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Attorneys for Appellant

## II.    <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I, Joshua S. Boyette, Esq.., certify that I am a member of the Bar of the U.S. Court of Appeals for the Third Circuit.

By:    <u>/s/ Joshua S. Boyette</u>

Joshua S. Boyette, Esq.

June 3, 2016

## III.  **CERTIFICATION OF IDENTICAL COMPLIANCE OF E-BRIEF**

I certify that the Brief emailed/filed to the Clerk's Office and the hard copies mailed to the Clerk's office and served on all parties are identical.

By:   /s/ Joshua S. Boyette

Joshua S. Boyette, Esq.

October 21, 2016

## IV.    **CERTIFICATE OF VIRUS CHECK**

I certify that the Brief was scanned for viruses using Avast! Free Antivirus.


By:    <u>/s/ Joshua S. Boyette</u>

Joshua S. Boyette, Esq.


October 21, 2016

## V.    CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This Reply Brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7) because this Reply Brief contains 7111 words excluding the parts of the Brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

This Brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the style requirements of Fed.R.App.P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Office 2010 in 14 pt Times New Roman font.

By:    /s/ Joshua S. Boyette

Joshua S. Boyette, Esq.

October 21, 2016

## VI.  **CERTIFICATE OF SERVICE UPON COUNSEL**

I, Joshua S. Boyette, hereby certify that I have on this date served a true and correct copy of the Brief of Appellant and Appendix upon Appellee's counsel via U.S. Mail and Electronic Filing:

Andrea M. Kirshenbaum, Esquire
A. James Johnston, Esquire
Kate Kleba, Esquire
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103

By:    /s/ Joshua S. Boyette

Joshua S. Boyette, Esq.


October 21, 2016